Caldwell. Mr. Hawks. Yes, Your Honor. Good afternoon. Good afternoon. How are you? Good. May it please the Court, Theodore Hawks for Ms. Lee and her two sons. Your Honor, this is a case of first impression for me, and I litigate many Chinese family planning cases where the judge applied the doctrine of estoppel to preclude a claim based on evidentiary concerns, specifically that the husband with the final order did not appear to testify. Was it estoppel, or did he just use it as part of the evidence in Lee's case? He said she didn't meet her burden, but in essence it was estoppel because he had said in so many words that she could not prevail without overcoming the husband's successfully appealing or overcoming whatever adverse considerations, whatever led to a denial of his claim. Does it make sense, though, Mr. Hawks, to do that? I mean, if one court, an immigration judge makes a ruling in one case, and the ruling basically is that your husband was not sterilized, that was appealed, and the ruling, I understand, remains as the I.J. found it. Does it make sense to apply that ruling in Lee's claim that piggybacks the sterilization claim? It doesn't for the following reasons, Your Honor. Because first of all, if you take the purpose of asylum as a protective statute to extend protection to individuals, in this case, families or spouses who undergo persecution. The thing is, don't you find inconsistent rulings on the same issue by two different I.J.'s? But, Your Honor, if you look at the way that we don't know, the thing is, it might stand to reason, your question is not without a basis, but this record doesn't, how do we know what the other judge did? This record has nothing of it in it. There is no inconsistent statement. There is no whatever the prior judge's reason, the judge apparently had it on his table, but neither the judge nor did the government counsel bother to put any of that adverse information in this record. Well, the record that we have is completely consistent with the credible claim, including medical records, of sterilization, which was forced according to the wife's testimony, husband's sworn statement. Maybe the immigration judge in this case had some belief that it would have been stronger if the husband had come in and testified and said he was sterilized, but as it was, the record just reflected that he tried to say he was sterilized in his own case and the court discounted it and did not believe it, and so he didn't show up this time, right? Correct, Your Honor. And she didn't have any other corroboration of what happened? Well, the medical evidence of infertility and sterilization was in the record from a U.S. doctor, not a Chinese doctor. But we don't know that that was involuntary. I mean, you could have a voluntary sterilization based on the medical records, right? Of course. Those records do not explain the exact circumstances. I appreciate Your Honor's question, but he was going to be arrested. He said, the wife said clearly that he would be arrested. And I understand, having practiced in Philadelphia in the immigration court, they do take you into arrest. How can we impose this kind of a catch-22 on people who have been persecuted by the government that you've got to either go to court and be arrested or give up or waive your right? Your Honor, I mean, in the normal case, we only have a letter from the spouse in China. They're not both in the United States, and the cases are adjudicated on that basis. And I understand that reasonably available evidence should be provided to the court. But when you know you're going to get arrested by showing up, that evidence, that witness is not reasonably available. And in the Second Circuit, I've never had trouble with a spouse who's got an order not showing up. If the spouse had no order and was working at a restaurant down the street and didn't show up in court, well, you lose for failure to present reasonably available evidence. And that has been upheld in other circuits. How do you think the I.J. shooter proceeded? I mean, the I.J. was aware that the husband's claim had been denied. Right. And she is making a claim on the basis of her husband's sterilization. That's what the law provides. So how do you think the I.J. shooter proceeded? Well, you know, it's not for us to change the record that we have. The I.J. should have put the other record in, but put it in. He had it on his table. It's actually the government attorney's job to offer evidence opposing a claim, the district counsel who was litigating the case on the other side. Their job was to put in whatever they felt would have been germane to this case. And then the judge could have reviewed it and made a determination, as he must, that that evidence either is the discrepancies are central or not central. You said that's what the law provides. How about this court's criticism of CYC and Chen v. Ashcroft? Where does that leave us? Well, that was my case, Your Honor, so I am familiar with that. The Chen, is that the Judge Justice Alito case? Yes. That was the boyfriend sterilization case that is not really at issue, since it's accepted that this couple is legally married and that... Yes, but he construed the language, a person who has been forced to undergo an alteration. Sterilization. Again, Justice Alito had some real problems with that, didn't he? Yes, but in the end he accepted that CYC was the agency's determination of what the proper interpretation of the law is. Recently reaffirmed in SLL, another remand from the Second Circuit on a boyfriend abortion, girlfriend abortion case. And I know the Second Circuit is considering it on bank right now. But that issue was not determinative by any of the judges who have any level of adjudication in this case. So CYC is not challenged in this case. And I don't think it's before the court at the present time, Your Honor. Could you comment on the wife's independent claim? The IUD claim. Yes, you know, I'm reviewing that. I think that, you know, it really probably is distinguishable from the Lee and Yang cases, Ninth Circuit and I think the other might have been the Seventh, where there was a very abusive rape-like IUD insertion. That's not what happened here. But, you know, the category of IUD cases could be, you know, with detention. That didn't happen here with severe medical consequences. And those, I think, are fairly strong claims. I would concede that on this record that the IUD claim of itself  Okay. Well, let's see. Why not? Is it because there was no infliction of pain or suffering or because of our higher standard, severe pain? Can insertion of an IUD ever amount to resistance? Well, it is resistance, but it would be one that applies to so widely and that it's reversible. You know, in my view, actually, it needs something aggravating to bring an IUD claim over the threshold for persecution. And it happens in cases of abusive procedures, detention, medical consequences that are, you know, severe. And I think that sterilization, obviously, is a far more serious claim, far more serious procedure with more serious consequences and more permanent. Although it is, you know, possibly reversible, it certainly is distinguishable from an IUD. What relief do you seek? You want it to be remanded to the IJ to look at the record in the husband's case? No, they had their shot. I want the court to remand with instructions to grant asylum if there are no fingerprint check problems that, you know, must be done before asylum can be granted. I don't think that, you know, the husband doesn't get, you know, it's just unfair to give the government a chance to fix the error that has been committed in this record by totally failing to scrutinize the so-called defective husband's claim and put it in the record and make a ruling based on what that claim is. Could the court take judicial notice of the record from the other case? No, because it's not in the record, Your Honor. The judge, they could have put it in. I mean, it's a record before the same body, right? I mean, it's like taking judicial notice of a district court from another district court. I've never heard of that being applied in this case, in an immigration case, taking judicial notice, which is in effect what the immigration judge did, taking judicial notice, but since this is not of general conditions or something, it's this family's case, and they didn't put that case in this record. Nobody disputed that that was, in fact, accurate. I'm sorry? Nobody disputed that it was, in fact, accurate that the husband's claim was rejected. Oh, no, and I don't dispute it right now. But claims can fail for so many reasons. What if the husband, I mean, hypothetically speaking, if the husband's claim had failed because the wife didn't write a letter, the wife's letter was missing, or didn't have enough documents, and that was remedied in this, obviously, a more carefully prepared presentation in the first instance to the immigration judge. It wouldn't make any sense. You reserve time for rebuttal, I think. I see, you're right, I intend to, but can I reserve the rest of my time right now? We'll give you three minutes. Okay, thank you, Your Honor, thank you very much. Thank you, Mr. Cox. Mr. Mansfield? May it please the Court, my name is Paul Mansfield, and I represent the United States in this case. Judges, what is primarily at issue here is, and let me address Mr. Cox's initial argument, which is the utilization of the word estoppel. At no time did Judge Honeyman, at any point, say that he was estopped from considering that issue. In fact, he invited the claimant to provide testimony and ask for an explanation as to why testimony was not provided regarding that particular issue. But collateral estoppel does apply in immigration cases. Why doesn't it apply here? He didn't mention the words, but doesn't it seem like that's what he was saying? No, Judge Fuentes, because the Court took into consideration the entire circumstances here. The Court was willing to listen to both the claimant's testimony as well as ask questions about whether or not the husband was going to testify. That in and of itself indicates that the Court was willing to accept testimony on that issue. Your part says that he was scared of being arrested, and therefore he was justified not showing up. Do you agree with that? Judge Siler, that was the wife's testimony. And she decided that there was some risk in that, so she decided to come in and give her side of the story and hope for the best. Was there some order for him to be picked up at the time? There's nothing in the record reflecting that, Your Honor. The applicable law with respect to this case is the Court reviews the BIA's factual finding under the substantial evidence test. The decision must be upheld if it's supported by reasonable, substantial, and provident evidence on the record considered as a whole. And that's exactly what Judge Honeyman did in this case, considered the record as a whole, considered the testimony of Ms. Lee, considered the fact that there had been an adverse determination in New York which had been upheld by the BIA, which had not been appealed to the Second Circuit. Notwithstanding that, the Court indicated a willingness to hear that sort of testimony. In addition on the legal standards, the decision must be affirmed unless the evidence not only supports the other conclusion, but compels it. And the Court has said this is an extraordinarily deferential standard, and the scope of the Court's review is exceedingly narrow. And I'd like to address the issue of what specifically Judge Honeyman says regarding the testimony. What Judge Honeyman says with respect to the testimony of Ms. Lee is that the respondent today, and I quote, the respondent today, with a few minor discrepancies, did testify consistent with her claim. And when Judge Honeyman made that statement, he was comparing her testimony the day of the hearing with the statement that she had attached to her asylum application, which was about seven pages long. What Judge Honeyman also said is the problem with the respondent's case has less to do with credibility, which is rare for these cases, but more to do with whether the respondent can possibly meet her burden of proof. And that's what this case is about. Now, not how accurately Ms. Lee testified with respect to her former statement, but whether or not Ms. Lee sustained and met her burden of proof. Didn't he also say that the claimant was very, very credible? No, Your Honor. That's why I'm making these points. The third thing he said, and I quote from the court's decision, although the respondent testified in a facially consistent manner with her claim, even beyond the scope of the stipulation that she would testify consistent with the declaration, the court concludes that she has not met her burden of proof and persuasion on this record that she has suffered past persecution. That's a fundamental point, Judge Fuentes. The court is, government readily concedes, the court is not making an adverse credibility decision, but I have quoted the exact language that the court utilized in characterizing and making conclusions as to her testimony. So in light of that, the court's statement is the court's statement regarding her. How do we take it to mean that she had within her power the ability to provide cooperating evidence if she failed to do so? Absolutely, Judge Fuentes. And the witness, he clearly stated that in the decision. And clearly noted the fact that there had been an adverse decision with respect to the husband, that he had decided not to come because he was up in New York working in a restaurant. The court also had the right to take into consideration that her testimony was that they were away from each other for about nine or ten years between 1992 and 2001, that he's working on a restaurant up in New York on the day she's having her hearing, and that they see each other three or four times a month. I mean, I think the court could take into consideration those sorts of facts in determining the appropriate decision to be made. Should we treat CYZ as the binding law here in light of our prior criticism of that case? Judge Van Antwerpen, I readily agree that it is not at all clear and quite unclear that the Court of Appeals in the Third Circuit has identified the CYZ as the applicable law in the Third Circuit. It is not. It's a BIA determination which has not been specifically adopted. But for purposes of this argument, Judge Van Antwerpen, even assuming that we put the wife in the husband's shoes, the husband's shoes in this particular case are leaking. And what I mean by that is a point that Judge Seiler made before is there are different ranges of the degree of specificity that this individual could have testified to. The record reflects that she was at home and that several individuals came over and forcibly took her husband away. And several hours he returned home and claimed that he had been sterilized. There is no record and no document to establish that that's exactly the way the sterilization occurred. As Judge Seiler correctly pointed out and as Mr. Cox has conceded, the medical testing with respect to the sterilization was actually conducted in the United States rather than China. So left with that, Judge Antwerpen, the question then becomes what do we do with Ms. Lee's testimony regarding this particular incident? And I would respectfully suggest that the court did the correct thing, looked at the nature of the evidence and the quality of the evidence and the degree of specificity. What you do not hear is Ms. Lee testifying that she accompanied her husband to the hospital. What you do not see in the record is any testimony about observing the procedure itself or coming back with him. And once again, the degree of specificity with which she testified, even assuming what she testified to was consistent with what she had previously said, simply was not sufficient to sustain the burden of proof. Could she have taken his previous testimony from his case and placed it in the record here to show, I assume, that he must have testified something about being sterilized in his own case? I believe so from the record, Your Honor. But obviously that was something that was obviously something the claimant could have done and the claimant elected not to do. Not having the record before us, we don't know. There may have been strategic reasons for doing that or for not doing that. But the fact of the matter is, it's very clear from the record that Judge Honeyman was not saying, hey, I mean, adverse credibility determination has been made on this thing. I'm not even going to consider it. It's been decided. That's not what the record reflects. What the record reflects is that the court took into account the decision that was made, the fact that the husband had testified, the fact that the husband was not present to testify at the wife's proceeding. Could the court have accepted an affidavit from the husband? Has that ever done? Is that admissible evidence before an I.J.? Instead of personal testimony. I mean, if he was on the lam, I suppose. There was not an effort on the part of the claimant to do that. Nobody tried to do so. Did the I.J. in this case say that he was bound to honor the ruling of the prior court in regard to the husband's sterilization? No. Judge Fuentes, what he said was that he felt as if it would be unfair to the government without the husband coming in and testifying in a manner supporting his wife to undermine the decision that had been made by the I.J. and affirmed by the B.I.A. which had not been appealed to the court of appeals. So his statement was not affirmatively honoring it. His statement was that he thinks that that would not be fair to the government. The simple fact of the matter is there is nothing in the record reflecting this is an assumption that Mr. Cox is making and this was based upon testimony that Ms. Lee made at the hearing. The arrest may very well have happened, but there was a significant moment and there was a significant outcome which was at stake here and she elected not to present the testimony of her husband. So what I think the I.J. had to do was, well that's not here, that's not presented so what I need to do is look at the remaining evidence and make a determination whether or not she has sustained her burden of proof and clearly there was substantial evidence for the court to reach the conclusion that it did in this case. You would say the first determination has no preclusive effect whatsoever? I would say, Judge, that it was certainly a factor and the court made clear that it was a factor in the decision-making process but the court never used the word, I'm precluded from considering this or I'm collaterally stopped from considering this or I just absolutely refuse to consider this. The court made clear what it was going to do and what the court was going to do was consider that as part of the presentation that had been made as well as the affidavits, the medical evidence, the testimony of Ms. Lee and the country reports. What's your view, Mr. Mansfield? What's your view? Your Honor, China has a very oppressive society. As an American citizen, it's very difficult when you see a population control program like this but that's me talking as an American citizen. My question should be narrower. What's your view about the preclusive effect of the first judgment? Your Honor, I think that Judge Honeyman was correct. First of all, that wasn't a matter that was litigated but I think Judge Honeyman erred on the side of caution and allowed it to come in and be part of the determination that he was making. Getting to the coercive population control policy, once again, what we have to look at and Mr. Cox has conceded the issue with respect to the IUD device. That case is factually distinguishable from the egregious, rape-like circumstances of the cases that have been cited in his brief from the 9th Circuit and the 11th Circuit. In addition, the statute specifically talks about sterilization and abortion and specifically does not mention any IUD procedures. Of course, there's a fundamental distinction between the IUD procedures and the other procedures because it's a temporary procedure. But is there any reason it can't qualify as other resistance? Yes. Judge, based upon the case law, the 3rd Circuit has not made that determination and the BIA said in this particular case that based upon the facts that have been presented, the kind of extraordinary circumstances that might fit within that catch-all provision have certainly not been met in this particular instance. That's not to say that there aren't in circumstances, Judge Fuentes, where forced IUD insertion might constitute a violation of the statute, but this is clearly not the case. Good point. We would ask that this decision be affirmed. Thank you, Mr. Minister. Mr. Cox. Thank you, Your Honor. Just a couple of points. The husband's affidavit is in this record a 201-206 sworn and notarized statement, which is consistent with the claim. And you know what troubles me about the bifurcated hearing that you might say that Judge Hyman accepted by stipulation of the parties, the truth of her, the consistency, at least, of the foregone testimony of the wife that she was asked to not testify about what her statement talks about, seeing her husband be arrested and dragged off by the family planning people. And he said, I'll accept it as true because I'm precluding it. I don't need to hear it. And I'll just take Part B on the IUD. I don't think that's a proper procedure in the first place. And normally, judges make the judgment as to credibility on the whole. And one would think that if Judge Hyman were concerned about credibility, he'd want to hear her, the whole claim, about what she saw and observed during the whole time that she was in China with her husband and make it a credibility determination, you know, demeanor, the things that judges normally do. It's just quite astonishing to find that part not even necessary, then go on to rule on an apposite burden of proof issue. And I'd like to just make one point about CYZ. You know, the board wisely and properly, I believe, extended the amendments to the asylum law in section 601 to a whole family because procreation, having children is a family, occurs in the context of a family and that the asylum laws otherwise provide that if a spouse gets asylum, the others, they can petition for family members. The asylum laws recognize the integrity of the family in its application and particularly in this family planning context and it would be so unfair to women. This is a law that is protective of women who alone are subject to forcible abortion and to the majority of the forcible sterilization, 75% to 25% for men in China. And for this court to take that away from a settled case law and reaffirmed last September in S.L.L. I think would be doing a tremendous disservice to the drafters of this amendment for family planning protecting people persecuted under the family planning policy. But they didn't put anything express in there about spouses to rip their brains, did they? Right, it's not expressed but it's imminent or inherent in the concept of applying protection from our government to those people who get here which is certainly not many compared to the many who suffer under this policy to extend it to the spouse and to the whole family I think is considering we're talking about an asylum definition not about contract interpretation or derivative stock options or something like that. This is an asylum law not a narrow other kind of statute and I think the court should be cognizant of the purposes of the statute and the protective extent that it is intended. Why is a grant of the petition which I think you're seeking better than a remand to allow for additional testimony? A grant? That's what I'm seeking a grant, yes. Well, under Ventura the court is not outright into the Supreme Court but I think we have a record which is clear there is nothing unclear about the record we have and I don't think that it should be remanded for additional testimony. And that record is that the IJ did not require the husband to corroborate Lee's testimony? I'm sorry. Is that the specific point that you want us to focus on that the IJ specifically required that Lee's husband testify and corroborate her testimony? Yes, that's correct and relying on evidence not in the record as to his prior application. Thank you, Mr. Cox. Mr. Mansfield and Mr. Cox thank you very much we'll take the case under advisement.